IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. FARLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KENNETH R. FARLEY, APPELLANT.

Filed March 5, 2024.    No. A-23-138.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Sarah Newell, of Berry Law Firm, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Kenneth R. Farley appeals his conviction and sentence for first degree sexual assault of a child following a jury trial in the district court for Lancaster County. Farley claims that the district court erred when it denied his motion to sever; granted the State's motion in limine; issued a supplemental jury instruction; made various evidentiary determinations; and denied his motion for a new trial. Farley also claims his sentence is excessive. For the reasons contained herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND AND CHARGES

This case arises from allegations of child sexual assault against Farley made by E.J., Farley's stepdaughter; T.B., the biological niece of Farley's wife; and M.N., Farley's biological niece.

- 1 -

On January 6, 2021, Farley was charged by complaint in the Lancaster County Court with three counts of first degree sexual assault of a child, a Class IB felony in violation of Neb. Rev. Stat. § 28-319.01. The three counts corresponded to the alleged assaults of E.J, T.B., and M.N, respectively.

An affidavit of probable cause by a Lincoln Police Department officer was filed the same day. The affidavit stated that on May 23, 2020, the Nebraska Child Abuse and Neglect Hotline received a report indicating that E.J. had disclosed being sexually abused by her stepfather, Farley, between the ages of 5 and 9 years old.

The officer later forensically interviewed E.J. who disclosed that beginning at age 5 or 6, Farley began to touch E.J. inappropriately. E.J. alleged that Farley exposed his penis to her multiple times, made her watch pornography with him, made lewd comments to her, digitally penetrated her vagina once, and twice penetrated her anus with his penis. E.J. stated that the sexual abuse stopped when she was 10 years old and that all incidents occurred in the family home. E.J. reported that while she was disclosing Farley's abuse to her cousin, T.B., T.B. told E.J. that she had also been sexually abused by Farley.

The officer also interviewed T.B., who reported that when she was 9 or 10 years old, T.B. was spending the night at Farley's home while her mother cared for a sick family member. T.B. awoke that evening to Farley touching her vagina. T.B. denied that Farley had digitally penetrated her vagina and stated that the touching was an isolated incident.

A few months into law enforcement's investigation, the officer interviewed M.N., who stated that when she was 12 or 13 years old, she was removed from her parents' custody and placed in the care of Farley and his wife. During this time, Farley would enter her room at night and digitally penetrate M.N.'s vagina. M.N. also reported that Farley made her perform oral sex on him more than 10 times and once Farley orally penetrated her vagina. At times, Farley also attempted to penetrate her vagina with his penis. M.N. also described Farley making her watch pornography with him at least 10 times.

The case was subsequently bound over to district court and Farley was charged by information with identical counts.

On July 15, 2022, Farley filed a motion to sever, seeking three different trials, one relating to each of the alleged victims. A hearing on the matter was held on August 29, at which time Farley offered depositions of the three alleged victims and the law enforcement investigators who had worked on the case. We note that in T.B.'s deposition she made additional allegations that Farley had repeatedly touched, though not digitally penetrated, her vagina when she was around 12 years old.

At the hearing, Farley argued that the joinder of his charges was unfairly prejudicial because the charges did not arise out of the same act or transaction and, when charged together, was likely to taint his presumption of innocence. Farley also argued that although some of the time periods in the information overlapped, the charges were not closely linked in time, place, or circumstance, and the testimony of the alleged victims demonstrated differences in the circumstances of each alleged instance of sexual abuse.

In an order entered on September 19, 2022, the district court denied Farley's motion to sever. The court found that the charges were joinable under Neb. Rev. Stat. § 29-2002(1) (Reissue 2016) because all three were alleged violations of the same statute and the alleged incidents had

occurred when the victims were between ages 8 and 14 years old, at Farley's home, and Farley was either the uncle or stepfather of each victim. Further, the alleged incidents for each victim were not isolated, but rather occurred over a period of time.

When determining whether joinder would be prejudicial to Farley, the district court noted that each victim had alleged different instances of touching and/or penetration at different ages and in different locations of Farley's home. However, Farley did not explain why evidence of one of the alleged sexual assaults would be inadmissible in separate trials on the other charges. While the charges were of the same or similar character, the court found that Farley would not be prejudiced by joinder of the three counts under § 29-2002(3), as the evidence for each was sufficiently simple and distinct and the jury would be able to easily separate evidence of the charges during deliberations.

The information was amended on November 17, 2022, and again on November 18 to reflect slightly different date ranges.

## 2. TRIAL

A jury trial was held over 7 days in November 2022. Additional details will be set forth as needed in our analysis section below.

### (a) Notice Regarding *Daubert/Schafersman* Hearing

On November 14, 2022, the State filed a motion in limine, seeking to preclude Farley from introducing any evidence that M.N. had been adjudicated as a juvenile. The district court took up the motion on the first day of trial in the absence of the jury.

Farley argued that M.N.'s juvenile record went to her motive and explained her delayed disclosure. He asserted that M.N.'s accusation of Farley was an attempt to "divert attention from her own behaviors at that time, to getting out of the [juvenile court] system." Farley also noted that the defense's expert would testify regarding psychological research which demonstrates that "teens who have a diagnosis or have indicators of adolescent conduct disorder have a higher rate of untruthful disclosures." Though the defense expert could not diagnose M.N., the expert had reviewed her deposition and self-reported information, which contained various indications of adolescent conduct disorder.

The district court asked Farley whether he anticipated needing a *Daubert/Schafersman* hearing before his expert testified, and Farley responded: "That's up to the State." The State agreed that the hearing may be necessary should the defense expert's testimony specifically address M.N. The court noted that the necessity of the *Daubert/Schafersman* hearing could be resolved later during the trial. The court temporarily sustained the State's motion in limine as to M.N.'s juvenile adjudication, stating that it wanted to research the issue further.

### (b) E.J.'s and T.B.'s Testimony

Both E.J. and T.B. testified at trial and their respective testimony was generally consistent with the information contained in the affidavit of probable cause described above. However, we need not detail their testimony further as Farley was not convicted of the charges regarding them. We address the evidentiary issues relating to these alleged victims in the analysis section below.

(c) M.N.'s Testimony

M.N. testified that she was born in February 2004 and entered foster care in June 2015. M.N. lived with a foster family for approximately 6 months before she was placed in the care of Farley, her mother's brother. M.N. was then placed with another foster family in July 2017.

M.N. described her relationship with the two other alleged victims in the case. M.N. had contact with T.B. while M.N. was living with Farley and his wife but noted that it was inconsistent and mostly occurred during extended family events. M.N. was friends with T.B. on Facebook, though she had not directly contacted T.B. since she moved out of Farley's home. M.N. stated that she was very close with E.J. when the two were living together in Farley's home. M.N. and E.J. had not spoken much since M.N. moved out.

M.N. testified that her first sexual encounter with Farley occurred a few months after she had been placed in his home. M.N. was naked and taking a shower in the master bathroom when Farley entered to ask her a question. Farley then approached M.N. and digitally penetrated her vagina and asked if the action "felt good."

M.N. and Farley would work out together in his home gym. During these workouts Farley would grope M.N.'s buttocks, legs, and vagina both under and over her clothes and made comments about her physical appearance. Farley would also have M.N. rub his penis with her hands.

M.N. described two instances where Farley began to perform oral sex on her. Both times the act lasted 3 to 5 minutes before M.N. told Farley to stop and he complied. During the second instance, Farley also attempted to penetrate her vagina with his penis, but M.N. "stopped it." Farley attempted to penetrate M.N.'s vagina with his penis "two or three times" and told M.N. that he would rather be the person take her virginity, "because he loved me, than have somebody do it and leave me."

M.N. was unable to recall additional, specific encounters with Farley, but testified that there were several instances where he digitally penetrated her vagina and approximately five instances where she performed oral sex on Farley.

Though M.N. had seen a variety of case professionals and therapists during her time in foster care, she did not disclose the sexual assaults for many years. M.N. stated that due to her young age and the lack of a father figure in her life, she did not entirely understand that the encounters had been wrong. Later the frequency of new caseworkers limited her ability to build rapport and trust with a particular worker. M.N. also thought that she would "get in trouble" if she disclosed what happened, as Farley had told her that she would. M.N. likewise never disclosed the sexual assaults to E.J., though the two were close and shared a room while she was living with Farley.

In 2018, M.N. was reunified with her mother. However, M.N. was later placed on juvenile probation and in the summer of 2020, she began living in a group home. M.N. first disclosed the sexual assaults by Farley to a staff member at this group home and later to the therapist whom she was seeing. M.N. was aware that her therapist had relayed her report to law enforcement.

After M.N. had cooperated with law enforcement and been interviewed at a child advocacy center, she learned from reading a news report that two other women had come forward with

allegations against Farley. During her deposition in 2021, M.N. discovered that the two other alleged victims were E.J. and T.B.

When asked if M.N. was able to recall instances of assault in chronological order, she stated, "[t]here are certain instances that stand out more. It's, kind of, it's a little blurry chronologically but there are some things that really do stand out." Different questions triggered different memories for M.N., and her answers to questions sometimes depended on how a particular question was phrased. M.N. testified that she had been truthful during her child advocacy center interview, deposition, and at trial.

### (d) State's Expert Testimony

Dr. Barbara Sturgis, a clinical psychologist, provided expert testimony for the State regarding delayed disclosures. Sturgis testified that victims of childhood sexual assault may delay disclosure because they do not understand that they have been abused, or for fear that they will be in trouble; that reporting the abuse may disrupt the family; and that their abuser may harm them. Once a child does disclose that they have been abused and the crime is investigated, different interviews of the child may illicit different details of the abuse. Children also may be able to remember the sexual abuse but be unable to distinguish how many instances of abuse occurred because human memory is reconstructed in the brain.

Children do falsely report being sexually abused, though rarely. Sturgis testified that psychologist William O'Donohue authored a peer-reviewed, critical review of the academic literature in 2018 and concluded that 2 to 5 percent of children falsely report sexual abuse. Adults and children falsely report sexual abuse at similar rates, though the rate for adults is slightly higher. Sturgis stated that she had not seen academic literature indicating that children with a particular diagnosis falsely report in higher numbers, though particular authors including O'Donohue have opined as much.

On cross-examination, Sturgis was asked about a chapter in a 2016 book by O'Donohue where he asserts that children who have adolescent conduct disorder may more frequently falsely report sexual abuse. Though Sturgis had relied on O'Donohue's 2 to 5 percent statistic, Sturgis noted that this statistic had been based on a critical review of 10 different studies, whereas O'Donohue's hypothesis regarding the connection between adolescent conduct disorder and false reporting had not been peer-reviewed. Sturgis believed that O'Donohue was merely raising a speculative question without supporting data.

### (e) State's Motion in Limine Regarding Adolescent Conduct Disorder

After the State rested and before Farley began his case-in-chief, the State filed a motion in limine to preclude Farley from presenting evidence on traits of adolescent conduct disorder, or any testimony by the defense's expert, psychologist Dr. Kirk Newring, suggesting or implying any alleged victim had said traits. The State alleged that pursuant to Neb. Rev. Stat. §§ 27-403, 27-404, and 27-405 (Reissue 2016), such evidence was irrelevant, contrary to law, and tended to confuse or mislead the jury.

The district court heard argument on the State's motion in limine outside of the presence of the jury. The State argued that no evidence had been presented or would be presented that any of the alleged victims had been diagnosed with adolescent conduct disorder. Thus, any testimony

by the defense's expert regarding specific traits of adolescent conduct disorder would be inviting the jury to diagnose the victims with the disorder. The State also argued: "the evidence that we've presented is that that's an opinion by an author. It's not any sort of information that's been verified by a study." The State reiterated that presenting evidence regarding a different rate of false allegations in certain populations of youth with adolescent conduct disorder would be unfairly prejudicial to the alleged victims and not relevant.

Farley argued that his expert witness had been permitted to testify about adolescent conduct disorder's connection to false reports in another case where the alleged child victim had not been diagnosed with the disorder. Further, the disorder's traits and correspondence to an increased likelihood of false reporting is "generally accepted in the psychological field." Farley argued that to present a meaningful defense, he needed to show that M.N.'s history met some of the criteria for adolescent conduct disorder and therefore M.N. "might be in the two to five percent (of false reports of child sexual abuse)."

The district court then asked Farley, "you had offered earlier that it might make sense to call Dr. Newring and discuss, just, the underlying expertise here, the [Neb. Rev. Stat. § 27-702 (Reissue 2016)] issue, if there is one. Would you like to do that right now so that we can address that before we bring the jury back in?" Farley agreed.

Outside of the presence of the jury, Newring testified that O'Donohue alleged in a 2016 book that if a child shows traits consistent with adolescent conduct disorder, "that caution is warranted in their allegation [of sexual abuse], and that the potential for lying should be explored when reviewing the allegation." Newring stated that though the 2016 book was not itself peer-reviewed, the research relied upon by O'Donohue with respect to adolescent conduct disorder and how it interplays with false allegations is supported by peer-reviewed research. Newring testified that it is generally accepted in the psychological community that caution should be warranted when looking at abuse allegations from a child with traits of adolescent conduct disorder, especially when the child has a history of "deceitful behavior." Newring stated that the presence or absence of a diagnosis of adolescent conduct disorder is not as important as the behavior or traits that would support a diagnosis.

On cross-examination, Newring conceded that no peer-reviewed study indicates an individual with adolescent conduct disorder will falsely report sexual assaults at a higher rate. Newring stated: "I don't think we could design such a study that would show that."

After Newring's testimony, the State reiterated that there was no data supporting O'Donohue's theory that traits of adolescent conduct disorder had some correspondence to an increased likelihood of false reporting. Farley argued that the State had not discussed error rates in its discussion of delayed disclosures and that he was entitled to rebut the State's argument that this was a delayed disclosure case.

The district court determined that Farley's evidence regarding the traits of adolescent conduct disorder would not be presented to the jury. The court noted "under *Schaeferman* that I'm supposed to act like a gatekeeper in situations as it relates to exert testimony." The court found that there had not been any evidence that the underlying theory related to adolescent conduct disorder and the conclusions in O'Donohue's book had been tested. Additionally, there had not been any evidence that O'Donohue's underlying, specific, theory had been peer-reviewed nor had there been any evidence as to the theory's rate of error. The court found that there had only been

very brief testimony by Newring about the theory's general acceptance in the relevant scientific community.

The district court concluded that because it could not find the specific evidence to be reliable, it would not be admitted. Moreover, even if the evidence related to the traits of adolescent conduct disorder, as applied, was reliable, the court found that it was not applicable to the facts of this case. The court noted that there had been no evidence that any of the victims had been diagnosed with adolescent conduct disorder and the court agreed with the State that that inclusion of the evidence put the jury in the position of making that diagnosis.

Excluding any evidence related to the traits of adolescent conduct disorder, Newring was permitted to testify. In the presence of the jury, Newring testified to his clinical experience regarding grooming, false reporting, and delayed disclosures. With regard to delayed and false disclosures, Newring testified that "research would suggest the adolescent would be more focused on the immediate short-term consequences to themselves, and not attend as much to the long-term consequences to others." Newring went on to state that wanting to get out of the juvenile court system "would fit."

### (f) Jury Instructions and Questions

The district court instructed the jury on the elements of each crime charged and on the State's duty to prove these elements beyond a reasonable doubt. One of the elements listed in each count was that Farley engaged in the underlying conduct at the time alleged in the information.

During deliberations, the jury submitted the following question to the judge: "We've reached a [unanimous] decision on two of the three counts. However, we've discussed at length & don't feel we can reach a decision on the third count. What are the next steps?" After consulting with counsel, the district court advised the jury that given they had heard evidence for 5 days but had deliberated for only 5 hours, the court believed it was too early for the jury to abandon its efforts to reach a verdict on the third count.

A few hours later the jury submitted a second question to the judge: "On Count 1 related to element #4. Are we able to consider events that occurred outside of the specific time frame? Example: events 2014-2015[.]" After consulting with counsel, the district court advised the jury that "[t]he exact time when a criminal offense is committed is not an essential element of the crime." The court did so over Farley's objection.

### 3. VERDICT

The jury returned unanimous verdicts of not guilty as to count II, the charge regarding T.B., and guilty as to count III, the charge regarding M.N. The jury was unable to come to a unanimous verdict on count I, the charge regarding E.J. After considering the length of trial and the nature and complexity of the issues presented to the jury, the district court declared a mistrial as to count I. The court also accepted the jury's verdicts as to count II, dismissing the charge against Farley, and count III, finding him guilty. The State later filed a motion to dismiss count I without prejudice and the court ordered the dismissal.

### 4. MOTION FOR NEW TRIAL

On December 1, 2022, Farley filed a motion for a new trial. Farley's motion alleged that the district court's denial of Farley's motion to sever; the court's exclusion of Newring's testimony regarding the traits of adolescent conduct disorder as part of his rebuttal to Sturgis' testimony; and the insufficient evidence for conviction entitled him to a new trial. Farley argued that the State's motion in limine made no reference to § 27-702 or *Daubert/Schafersman*, though that had been the grounds upon which the district court excluded Newring's testimony.

At a hearing on December 13, 2022, the district court overruled Farley's motion for a new trial. Addressing Farley's motion to sever, the court pointed to its reasoning in its September 19, 2022, order denying the severance and to the outcome of the trial, which demonstrated that the jury considered each count separately and that there was no prejudice by denying the motion to sever. Regarding the exclusion of evidence related to adolescent conduct disorder, the court noted that it excluded the evidence on multiple grounds and though the State did not explicitly refer to § 27-702 in its motion in limine, it made arguments in that regard at trial. Moreover, the court found that according to federal law, it was permitted to raise *Daubert/Schafersman* issues sua sponte. Finally, the court observed that the jury had found there to be sufficient evidence to convict, and the court declined to disturb the findings of the jury.

### 5. SENTENCING

At the sentencing hearing on January 24, 2023, the district court sentenced Farley to a term of 55 to 70 years' imprisonment on count III. Farley was given 63 days credit for time served.

Farley appeals.

## III. ASSIGNMENTS OF ERROR

Farley assigns, restated and consolidated, that the district court erred in (1) denying Farley's motion to sever; (2) granting the State's motion in limine and excluding a portion of the defense expert's testimony; (3) issuing a supplemental jury instruction regarding the consideration of events outside of the timeline contained in the information; (4) various evidentiary rulings related to E.J.; (5) denying Farley's motion for a new trial; and (6) imposing an excessive sentence.

## IV. ANALYSIS

### 1. FARLEY'S MOTION TO SEVER

Farley first assigns that the district court abused its discretion in denying his motion to sever because the counts were not properly joined, and joinder resulted in substantial prejudice.

There is no constitutional right to a separate trial. *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). Instead, the joinder or separation of charges for trial is governed by Neb. Rev. Stat. § 29-2002 (Reissue 2016), which states, in relevant part:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

. . . .

(3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses in an indictment, information, or complaint or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

Whether offenses were properly joined involves a two-stage analysis: (1) whether the offenses were sufficiently related so as to be joinable and (2) whether the joinder was prejudicial to the defendant. *State v. Garcia, supra*. There is a strong presumption against severing properly joined counts. *Id*. While § 29-2002 presents two separate questions, there is no error under either subsection (1) or subsection (3) if joinder was not prejudicial, and a denial of a motion to sever will be reversed only if clear prejudice and an abuse of discretion are shown. *Id*. An appellate court will find such an abuse only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice. *Id*.

A defendant opposing joinder of charges has the burden of proving prejudice. To carry that burden, a defendant must show compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever. *Id*. Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial. *Id*.

Prejudice from joinder cannot be shown if evidence of one charge would have been admissible in a separate trial of another charge. *Id*. Additionally, joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. See *id*.

To support his contention, Farley cites to *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013), where the Nebraska Supreme Court addressed whether joinder of a sexual assault charge with child abuse charges was proper and, as relevant here, whether the charges were of the same or similar character. The charges at issue in *Rocha* were four counts of child abuse related to four alleged victims, and one count of first degree sexual assault of a child related to only one of the four victims.

We find *Rocha* to be distinguishable. The charges in *Rocha* fell under different statutes and involved assaults that were both sexual and purely physical, with no sexual purpose. See *id*. In this case, Farley was charged with three violations of the same statute, alleging sexual assaults against three different victims.

To determine whether the charges joined for trial are of the same or similar character, an appellate court looks at the underlying factual allegations. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). Here, as the district court found, significant similarities existed between the facts underlying the charges. For example, each of the alleged victims were in Farley's home for a period and the assaults allegedly occurred there, the victims were similar in age when the alleged incidents occurred, and Farley occupied positions of trust (stepparent, uncle, foster parent) with each of the victims, which positions he allegedly abused. And the allegations all involved illegal sexual conduct. We conclude that the charges were "of the same or similar character" and joinable under § 29-2002(1).

The next question is whether the otherwise proper joinder prejudiced Farley. Farley argues that joinder "muddied the waters" for the jury and resulted in confusion and a split verdict. Brief for appellant at 23. Farley also argues that because the jury asked a question regarding the consideration of events that occurred outside of the alleged timeframe, the jury considered evidence relating to the allegations of T.B. and E.J when the jury found Farley guilty of sexually assaulting M.N.

As the State points out in its brief, the jury had already reached unanimous decisions on two of the counts, those relating to M.N. and T.B., when the jury asked the question regarding the consideration of events beyond the alleged timeframe. Thus, this question does not demonstrate that the jury considered evidence relating to the allegations of the other victims when deliberating as to the count regarding M.N.

Additionally, the Nebraska Supreme Court has taken a jury's split verdict as confirmation that the jury had separated the evidence and offenses. See *State v. Knutson, supra* (joinder was not prejudicial because the jury found defendant guilty of the charges involving one alleged victim but acquitted him of the charges involving the other three). Such is the case here where the jury found Farley guilty of the count regarding M.N., not guilty of the count regarding T.B., and was hung as to the count regarding E.J. Because the evidence was sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations, Farley has not shown that he was prejudiced by the joinder. See *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). This assignment of error fails.

## 2. STATE'S MOTION IN LIMINE

Farley assigns that the district court erred in granting the State's second motion in limine. Farley argues that the State did not assert that the evidence regarding the traits of adolescent conduct disorder and its correspondence with an increased likelihood of false reports of sexual abuse was unreliable under *Daubert/Schafersman*, which was ultimately the basis for the district court's exclusion of the evidence. Instead, Farley argues that the issues raised by the State's motion in limine went to the weight of the evidence, as opposed to its admissibility. Farley contends that the State did not sufficiently object to trigger the district court's gatekeeping function.

The Nebraska Supreme Court has stated that whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. See *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). However, the accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. *Id*.

The district court raised the issue of the admissibility of Newring's testimony regarding adolescent conduct disorder and the possible need for a *Daubert/Schafersman* hearing at the commencement of the trial. Thus, Farley cannot claim that he was somehow surprised when the court conducted the hearing upon the State renewing its motion in limine before Newring's trial testimony. Nevertheless, we need not determine whether Newring's testimony was properly excluded under *Daubert/Schafersman*, as we find that Newring's testimony regarding adolescent conduct disorder was properly excluded under § 27-403. An appellate court is not obligated to

- 10 -

engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Huston*, 298 Neb. 323, 903 N.W.2d 907 (2017).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016). However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016). Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*. A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016).

Assuming without deciding that Newring's testimony regarding the relationship between traits of adolescent conduct disorder and an increased rate of false reporting was relevant in this case, we conclude that any probative value of the evidence was substantially outweighed by the danger that the evidence would confuse the issue and mislead the jury.

In determining that this evidence was inadmissible, the district court was concerned that the expert testimony regarding the traits of a particular diagnosis, which none of the victims had, created danger that a jury would jump to a conclusion about the victims' mentality and credibility. The court found that there had been no evidence that any of the victims had been diagnosed with adolescent conduct disorder and that inclusion of the evidence put the jury in the position of making such a diagnosis.

We agree with the district court's findings regarding the probative value of this evidence. The district court did not abuse its discretion in granting the State's motion in limine.

We further find that any error in the exclusion of this evidence was harmless. The jury was presented with evidence from both the State's and Farley's expert witnesses regarding the possibility of false reporting of sexual assault by children. Further, while Farley claims that Newring's testimony would indicate that there was an increased risk of false reporting in persons with adolescent conduct disorder, Newring's in camera testimony merely suggested that caution was warranted in addressing reports of sexual assault by these individuals. Farley was able to present evidence that M.N.'s report of the alleged abuse was delayed and was not disclosed until she was in a group home by virtue of her juvenile court involvement. And, Newring was able to testify that wanting to get out of the juvenile court system could "fit" with false disclosure. Farley also presented evidence from M.N.'s former therapist that M.N. was guarded during sessions and the therapist "could not depend on her being truthful to me." In sum, Farley was able to present evidence concerning M.N.'s credibility to the jury and was not prejudiced by the exclusion of the evidence in question.

### 3. Supplemental Jury Instruction

Farley next assigns that the district court committed error when it advised the jury that the exact time of the commission of the offense alleged in count I was not an essential element of the crime of first degree sexual assault of a child.

Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. See *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015).

In the instructions to the jurors, they were provided with the elements of each offense, along with the State's burden to prove each of the elements of each offense by proof beyond a reasonable doubt.

As to count I, the district court instructed the jury as follows:

    1) Kenneth R. Farley did subject E.J. to sexual penetration, and

    2) That, at the time, E.J. was under twelve years of age; and

    3) That, at the time, Kenneth R. Farley was at least nineteen years of age or older; and

    4) That Kenneth R. Farley did so on, about, or between June 1, 2008 and June 30, 2013, in Lancaster County, Nebraska.

During its deliberations, the jury submitted questions to the district court. The first question informed the court that the jury had reached a unanimous decision regarding two counts and inquired about next steps given that the jury was at an impasse regarding the remaining count. A few hours later the jury asked the district court: "On Count I related to element #4. Are we able to consider events that occurred outside of the specific time frame?" The district court responded: "The exact time when a criminal offense is committed is not an essential element of the crime." The district court also reiterated that the jury must find beyond a reasonable doubt as to the first three elements included in the jury instructions but omitted any reference to the time frame of the offense.

Farley asserts that the district court's response to the jury's question conflicted with its original instructions, which confused the jury and discouraged them from considering the instructions as a whole. Farley argues that such contradictory directions also allowed the jury to speculate as to the legitimacy and meaning of the remaining original instructions and encouraged the jury to relieve the State of its burden of proof.

Neb. Rev. Stat. § 29-1501 (Reissue 2016) provides in relevant part:

No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected ... for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense; nor for stating the time imperfectly....

In *State v. Wehrle*, 223 Neb. 928, 931, 395 N.W.2d 142, 145 (1986), the Nebraska Supreme Court held that "the exact time when a criminal offense is committed is not an essential element of a crime unless the statute defining the offense makes a date or time an indispensable element of the crime charged."

The Nebraska Supreme Court reiterated this proposition of law in *State v. Samayoa, supra*, which involved a jury questioning whether the exact time a criminal offense was allegedly committed was an essential element of the crime. The Supreme Court observed that the exact time of the offense was not an essential element of third degree sexual assault of a child and so the trial court's answer to the jury stating such was a correct statement of law. The Supreme Court found that the trial court had not erred in its answer to the jury's question, despite the original jury instructions including an alleged time frame for the offense.

Here, Farley does not appear to be complaining that he was deprived of notice of the allegations. He only alleges that the instruction was in error and somehow conflicted with the rest of the instructions and that the district court should have told the jury to continue to deliberate, apparently without any supplemental instructions from the court.

As in *Samayoa*, the instruction given by the district court was not incorrect. The exact time is not an essential element of first degree sexual assault of a child. See § 28-319.01. The supplemental instruction given by the district court was a correct statement of the law, and Farley has not shown that the supplement instruction was prejudicial or otherwise adversely affected a substantial right of Farley, especially considering that the jury was unable to reach a unanimous decision regarding this count and it was dismissed. This assignment of error fails.

### 4. EVIDENTIARY RULINGS RELATED TO E.J.

Farley assigns that the district court erred in several evidentiary rulings related to E.J. and peripherally to T.B. Farley was found not guilty of the charge regarding T.B. and the charge regarding E.J. was dismissed by the State after the jury was unable to return a unanimous verdict. Farley was only found guilty of the charge regarding M.N. and he does little to create a nexus between the assigned evidentiary errors and his conviction involving M.N. Thus, we only discuss the two assigned evidentiary errors that Farley specifically argues resulted in his sole conviction regarding M.N. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023).

Regarding the district court allowing the State to elicit testimony about E.J.'s disclosure to a friend over Farley's hearsay objection, Farley argues that in a case where three alleged victims "were joined to enhance the prejudicial impact of the dissimilar allegations and where credibility issues exist . . . it cannot be said that the verdict as to M.N. was surely unattributable to the error." Brief for appellant at 30.

As we found above, the district court properly denied Farley's motion to sever and the jury's split verdict evidenced that Farley was not prejudiced by the State bringing the three charges of first degree sexual assault together. To the extent that Farley argues that "credibility issues exist," this was for the jury to decide. An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

Regarding the district court disallowing Farley to elicit testimony from E.J.'s mother about E.J.'s internet history and E.J. making a threat against Farley, Farley argues that "the jury's question shows they considered the other allegations when reaching the verdict as to M.N." Brief for appellant at 34. As discussed above, the jury had already reached a unanimous decision as to M.N. before it asked any questions of the district court. Further, the split verdict demonstrates that the jury was able to separate the evidence as to the three, distinct counts.

Because Farley has failed to sufficiently connect the alleged evidentiary errors to his sole conviction, this assigned error fails.

### 5. FARLEY'S MOTION FOR NEW TRIAL

Farley assigns that the district court erred in denying his motion for a new trial. He argues that there was an irregularity in the proceeding when the district court issued an "eleventh hour" order excluding Newring's testimony regarding the traits of adolescent conduct disorder and the correspondence to an increased likelihood of false reporting, and that there was insufficient evidence to convict him of first degree sexual assault of a child. Brief for appellant at 34.

### (a) Irregularity in Proceedings

A new trial may be granted where there is an "[i]rregularity in the proceedings of the court, of the prosecuting attorney, or of the witnesses for the state or in any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial . . ." See Neb. Rev. Stat. § 29-2101(1) (Reissue 2016). In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

Farley claims that the district court's exclusion of his desired expert testimony was an irregularity in the proceeding under § 29-2101(1), like the irregularity found by the Nebraska Supreme Court in *State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011). In *Hotz*, the defendant gave notice of his intent to rely on an insanity defense and the State filed a motion in limine against the defendant's use of the defense. Though the trial court's ruling was not part of the record, both parties proceeded as though the jury would receive an instruction on the defense. After the defense rested, the trial court announced it would not instruct the jury on the insanity defense. The Nebraska Supreme Court found that because the defendant and jury had proceeded through trial with the assumption that the defense was available, only to be barred from asserting the insanity defense "at what amounted to the eleventh hour," such was an irregularity in the proceedings under § 29-2101(1). See *Hotz*, at 280, 659.

Here, there was no pre-trial ruling or understanding that Newring would be able to testify regarding the traits of adolescent conduct disorder and there was no last-minute reversal before jury instruction that Newring's testimony would be struck. Rather, at the start of trial Farley was put on notice by the district court that a hearing on the admissibility of his expert's proposed testimony may be needed.

Our review of the record reveals no irregularities in the proceedings and the district court did not err in failing to grant Farley's motion for a new trial on that ground.

- 14 -

## (b) Insufficient Evidence

A new trial may also be granted where "the verdict is not sustained by sufficient evidence" or is contrary to law. See § 29-2101(4).

One is guilty of first degree sexual assault of a child under § 28-319.01(1)(b) "[w]hen he or she subjects another person who is at least twelve years of age but less than sixteen years of age to sexual penetration and the actor is twenty-five years of age or older." "Sexual penetration" is defined under Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2022) to include, "any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body." In reviewing a criminal conviction for a sufficiency of the evidence claim the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *State v. Bryant*, 311 Neb. 206, 971 N.W.2d 146 (2022).

M.N. testified that when she was approximately 12 and 13 years old, Farley digitally penetrated her vagina multiple times; forced her to perform oral sex on him, as well as performed oral sex on her, on several occasions; and at least twice attempted to penetrate her vagina with his penis. The State offered Farley's birth certificate into evidence, which demonstrated that he was approximately 44 and 45 years old during the period M.N. resided in his home.

Farley does not argue that M.N.'s testimony, if believed, would not support a finding that he had sexually assaulted M.N. Instead, he attacks the credibility of all three alleged victims.

The jury clearly made implicit credibility findings when it returned a split verdict on Farley's three counts, finding him guilty of only the count regarding M.N. In reviewing a conviction for sufficiency of the evidence, we do not pass on the credibility of witnesses and instead we recognize that it is a matter for the fact finder. See *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018). Viewing the evidence in this case in the light most favorable to the prosecution, we conclude that based on its witness credibility assessment, the jury could have found the elements of first degree sexual assault of a child had been proved beyond a reasonable doubt.

Because we find that there was sufficient evidence for the jury to find Farley guilty of first degree sexual assault of a child, the district court did not abuse its discretion in denying Farley's motion for a new trial on this ground.

## 6. EXCESSIVE SENTENCE

Farley was convicted of a Class IB felony, which is punishable by a minimum of 20 years and a maximum of life imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Additionally, Farley's Class IB felony resulted from his conviction for first degree sexual assault of a child pursuant to § 28-319.01, which sets forth a mandatory minimum sentence of 15 years prison for the first offense. See *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015) (minimum sentence for first degree sexual assault of a child is 15 years' imprisonment). Farley was sentenced to a term of 55 to 70 years' imprisonment and his sentence is within statutory limits.

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age,

(2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

When sentencing Farley, the district court stated that Farley had abused his role as M.N.'s uncle to subject her to repeated sexual assaults. The court described the sexual abuse as "horrific" and noted that though it can be challenging for victims of sexual assault to come forward, M.N. was brave for doing so, especially considering that the court had observed Farley "stare her down throughout her testimony . . ." The court also observed that Farley had taken no accountability for his actions. Farley argues that these comments by the district court amount to an abuse of discretion.

The presentence investigation report (PSI) prepared in this case indicates that Farley was 51 years old at the time of sentencing and had completed high school. His criminal history largely consists of traffic violations. Farley was assessed under the Vermont Assessment of Sex Offender Risk tool and scored as a low risk to recidivate. Farley scored as a high risk to reoffend on the overall LS/CMI assessment. The probation officer who compiled the PSI noted that Farley did not fully participate in the presentence interview, declining to answer multiple questions or provide certain information.

At the sentencing hearing, the district court stated that it had reviewed the entirety of the PSI and had considered the nature and circumstances of the crime, as well as Farley's history, character, and condition. The court specifically noted that Farley was not being sentenced for anything other than his conviction related to M.N. In addition to the comments described above, the district court also told Farley that "we have all heard in court today how your choices have impacted [M.N.] for the rest of her life. What she described in her own words as a life sentence."

The district court considered the appropriate factors in sentencing Farley. Additionally, the comments made by the court regarding Farley "staring down" M.N. and failing to take accountability for his actions are observations of the defendant's demeanor and attitude, which may be included in a sentencing court's subjective judgment. See *State v. Blake, supra*. Thus, we find no abuse of discretion in the sentence imposed.

## V. CONCLUSION

Finding no error by the district court, we affirm Farley's conviction and sentence.

AFFIRMED.